```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    x    06 Cv. 803 (SWK)
In re TAKE-TWO INTERACTIVE          x
SECURITIES LITIGATION               x    OPINION AND ORDER
                                    x
------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

On August 6, 2008, the Special Master, Charles G. Moerdler, issued a determination and order (the "D&O"), which granted Lead Plaintiffs permission to access the binary code of <u>Grand Theft Auto: San Andreas</u> ("<u>GTA:SA</u>"), in aid of their anticipated motion to amend the Second Amended Complaint. The following day, the defendants informed the Court that the parties had reached an agreement regarding access to <u>GTA:SA</u>'s code, which mooted the D&O, but was contingent upon the expunction of the same. On August 8, 2008, the Court directed the defendants to submit briefing concerning its authority to expunge the D&O. The defendants submitted the requested briefing on August 18, 2008. Special Master Moerdler thereafter recommended that the Court grant the defendants' motion to expunge on mootness grounds. For the reasons that follow, the Court now vacates the D&O as moot, and directs the Clerk of Court to remove it from the docket.

**I. DISCUSSION**

Under Federal Rule of Civil Procedure 60(b)(6), district courts may relieve a party from an order for "any . . . reason

that justifies relief." Fed. R. Civ. P. 60(b)(6). As a general proposition, however, relief is available under Rule 60(b)(6) "only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted). In determining whether a proposed settlement constitutes an exceptional circumstance that justifies the vacatur of a district court order, opinion, or judgment, courts weigh the private interests served by settlement and vacatur against the public interests prejudiced thereby. See Austin v. Ford, 181 F.R.D. 283, 284-86 (S.D.N.Y. 1998); see also Mattel, Inc. v. Goldberger Doll Mfg. Co., 236 F.R.D. 175, 176-77 (S.D.N.Y. 2006); In re Dubrowsky, 268 B.R. 6, 7-10 (E.D.N.Y. 2001); United States v. Reid, 96 Cv. 2004 (ILG), 2000 WL 1843291, at *2-*3 (E.D.N.Y. Oct. 31, 2000); Carter v. Rosenberg & Estis, P.C., 95 Cv. 10439 (DLC), 1999 WL 13036, at *2-*3 (S.D.N.Y. Jan. 13, 1999); Jeweler's Vigilance Comm., Inc. v. Vitale Inc., 177 F.R.D. 184, 187-88 (S.D.N.Y. 1998). Assuming that this balancing framework applies in the instant case,[1] the Court finds that

---

[1] The Rule 60(b)(6) balancing framework evolved in the context of motions to vacate district-court orders, judgments, and opinions on the basis of settlements that resolved the underlying litigation. Because the defendants in the instant case seek vacatur of an order rendered by a special master on the basis of a settlement that resolves only a single discovery dispute, it is not immediately clear that the balancing framework should apply. Nevertheless, because the Court ultimately finds that vacatur is appropriate under this framework, see infra, and as the Court perceives no persuasive

vacatur is warranted because of the weak public interest in continued publication of the D&O, and the stronger private interest in vacatur.

Courts have recognized that vacatur may affect the public interest in the finality of judgments, the development of decisional law, the conservation of judicial resources, and the deterrence of frivolous disputes. See Austin, 181 F.R.D. at 286; see also Reid, 2000 WL 1843291, at *3; Dubrowsky, 268 B.R. at 7. Vacatur of the D&O, however, does not implicate most of these considerations. For example, as the parties may object to the D&O,[2] thereby triggering the Court's obligation to perform de novo review of its findings, see Fed. R. Civ. P. 53(f)(3)-(4), and because the D&O resolves only a single discovery dispute, the public interest in the finality of judgments would scarcely be implicated by the D&O's expunction. Additionally, because the D&O was issued by a special master, and given that the D&O apparently will be subject to objections if it is not vacated, the availability and utility of the D&O as precedent for future litigants are limited. Furthermore, very few judicial resources have been expended to resolve the issues underlying the D&O

---

grounds for applying a more stringent standard to the D&O than that which would apply to a final judgment rendered by the Court, it need not determine whether some other standard for vacatur might apply to a discovery determination rendered by a special master.

[2] The defendants have informed the Court that they intend to object to the D&O if the Court refuses to expunge it.

because Special Master Moerdler receives compensation at the parties', not the public's, expense. Indeed, substantial judicial resources would be dedicated to the issues raised by the D&O only if the Court refused to vacate it, since the Court would then be compelled to hear the defendants' objections thereto.

The only public interest even ostensibly affected by vacatur of the D&O is that pertaining to the deterrence of frivolous disputes. In particular, the defendants vigorously contested Lead Plaintiffs' request to access GTA:SA's binary code until Special Master Moerdler issued his adverse ruling in the D&O. Just one day after that ruling, the defendants readily agreed to grant Lead Plaintiffs substantially all that they desired, provided that the ruling was removed from the public docket. The haste with which the defendants acquiesced in Lead Plaintiffs' request for access suggests that their initial vigorous opposition may have been pretextual. Nevertheless, as Special Master Moerdler acknowledged, the issues surrounding Lead Plaintiffs' request to access GTA:SA's code were largely issues of first impression. Moreover, the D&O undoubtedly altered the relevant legal landscape, placing Lead Plaintiffs on more advantageous negotiating grounds. As such, it is difficult to characterize the defendants' opposition to Lead Plaintiffs' request, or the defendants' ready rendition to that request, as

frivolous. Accordingly, the defendants' request to expunge the D&O implicates the public interest in deterring frivolous disputes only very slightly, if at all.

Conversely, the defendants have made a relatively strong showing that the parties' private interest favors vacatur of the D&O. Vacatur triggers the parties' agreement, thereby permitting Lead Plaintiffs to access GTA:SA's code under the terms they originally proposed. Although the D&O grants Lead Plaintiffs that same right, the defendants have indicated their intention to object thereto. Thus, vacatur secures Lead Plaintiffs' right to inspect GTA:SA's code, shielding that right from the possibility that the defendants might succeed in their objections. Additionally, vacatur permits the expeditious resolution of Lead Plaintiffs' request to access GTA:SA's code, obviating the need for a lengthy objections process and allowing for the prompt filing of Lead Plaintiffs Third Amended Complaint. Thus, vacatur substantially advances the progress of this litigation, and thereby serves the interests of both parties.

Moreover, vacatur furthers the defendants' interest in protecting their intellectual property rights, as well as their rights under the End User License Agreement (the "EULA") into which buyers of GTA:SA enter at the time of purchase. See Major League Baseball Props., Inc. v. Pacific Trading Cards, Inc., 150

F.3d 149, 152 (2d Cir. 1998) (vacating district court's opinion as condition of settlement because that opinion undermined party's intellectual property rights, which party was compelled to defend or be subject to defense of acquiescence). In particular, the D&O casts doubt upon the defendants' ability to assert intellectual property rights and rights arising under the EULA in future proceedings, largely on the grounds that the defendants have acquiesced in--and indeed, encouraged-- widespread infringements of these rights in the past. Consequently, vacatur secures, for the time being, the defendants' intellectual property rights, as well as their rights under the EULA. Nor does vacatur substantially impair the public interest in having these rights clarified, as this litigation focuses primarily upon alleged securities-law violations, not upon purported infringements of the defendants' intellectual property rights or the EULA. These rights can be elucidated in future litigation that focuses more squarely on the relevant issues, should such litigation arise. See id. (finding that, though vacatur would leave validity of party's trademarks an open question pending future litigation, private interest in vacatur outweighed countervailing public interest).

In light of the foregoing, the parties' private interest in vacatur outweighs any countervailing public interest favoring the continued publication of the D&O. Therefore, the defendants

have demonstrated extraordinary circumstances warranting vacatur under Federal Rule of Civil Procedure 60(b)(6). In reaching this determination, the Court of course expresses no opinion regarding the substance of the D&O.

## II. CONCLUSION

In summary, the parties' agreement granting Lead Plaintiffs access to GTA:SA's binary code moots the issues addressed in the D&O. Because the parties' private interest in vacatur is more compelling than any countervailing public interest, the Court hereby grants the defendants' motion and vacates the D&O as moot. The Clerk of Court is directed to remove the D&O from the public docket.

Given that the parties' agreement resolves Lead Plaintiffs' request to access GTA:SA's binary code, Lead Plaintiffs' anticipated motion to amend the Second Amended Complaint is now ready for briefing. See 06 Cv. 803 (SWK), Dkt. No. 118. It is hereby ordered that: (1) Lead Plaintiffs shall file their anticipated motion to amend, along with a copy of their Third Amended Complaint, on or before September 12, 2008; (2) the defendants shall file their opposition briefs on or before October 10, 2008; and (3) Lead Plaintiffs shall file their reply briefs on or before October 24, 2008.

SO ORDERED.

```
                                  _____
                                       SHIRLEY WOHL KRAM
                                  UNITED STATES DISTRICT JUDGE
```

Dated:   New York, New York
         August 21, 2008

SO ORDERED.

/s/ Shirley Wohl Kram
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:  New York, New York
        August 21, 2008

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/08