UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| IN RE TAKE-TWO INTERACTIVE ) | No. 1:06-cv-00803-RJS |
| SECURITIES LITIGATION ) | |
| ) | ECF Case |
| ) | |

**AFFIDAVIT OF JONATHAN M. PLASSE IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR AN ORDER (i) PRELIMINARILY CERTIFYING
A CLASS FOR SETTLEMENT PURPOSES ONLY, (ii) APPROVING THE
PROPOSED MANNER AND FORM OF NOTICE TO THE CLASS AND
CERTAIN SEC CLAIMANTS, (iii) PRELIMINARILY APPROVING THE
PROPOSED SETTLEMENT, (iv) SCHEDULING A FAIRNESS HEARING, AND
(v) GOVERNING CERTAIN RELATED ADMINISTRATIVE MATTERS**

STATE OF NEW YORK      )
                                          ) ss. :
COUNTY OF NEW YORK   )

JONATHAN M. PLASSE, being duly sworn, deposes and says:

1.      I am member of the law firm of Labaton Sucharow LLP, attorneys for Lead

Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund,

and New York City Fire Department Pension Fund, together with plaintiff State-Boston

Retirement System (collectively, "Plaintiffs") in the above-captioned consolidated class action

(this "Action").  I am a member in good standing of the Bar of this Court and I respectfully

submit this Affidavit, on personal knowledge, in support of Plaintiffs' unopposed motion for an

Order pursuant to Federal Rule of Civil Procedure 23(e) (i) preliminarily certifying a Class for

purposes of settlement only, (ii) approving the proposed manner and form of notice to the

proposed Class and to certain other parties who may be entitled to a distribution of funds

recovered by the Securities and Exchange Commission ("SEC"), (iii) preliminarily approving the

proposed settlement (the "Settlement") of the above-captioned consolidated class action (this

"Action"), (iv) scheduling a fairness hearing, and (v) governing certain related administrative matters (all as set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice to the Class and SEC Claimants (the "Preliminary Approval Order") submitted herewith).

### Introduction

2.      In this Action, Plaintiffs have generally alleged that Defendants Take-Two Interactive Software, Inc. ("Take-Two" or the "Company"), Rockstar Games, Inc., Ryan Brant ("Brant"), Paul Eibeler, Karl H. Winters, Todd Emmel, Robert Flug, Oliver R. Grace, Jr., Sam Houser and Terry Donovan (collectively, "Defendants") violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by issuing false and misleading statements during the period from December 17, 2002 through July 10, 2006, inclusive (the "Class Period").

3.      Specifically, Plaintiffs have alleged that Defendants made misstatements and omissions in connection with (a) the inclusion of sexually explicit content in Take-Two's then-premier product, the *Grand Theft Auto: San Andreas* ("GTA:SA") video game, which ultimately caused the game to be temporarily withdrawn from circulation, resulting in the incurrence of significant costs to Take-Two; and (b) the backdating of stock options granted to its directors and senior management.

4.      The Settlement was negotiated only after substantial motion practice, extensive private investigation by Plaintiffs and their counsel's investigative staff (which included locating and obtaining testimony from one of the software developers who created the computer patch used to access the sexually explicit GTA:SA content), and informal discovery involving the review of more than 1.4 million pages produced by Take-Two at Plaintiffs' request as a

condition to entry into settlement discussions, followed by seven in-person mediation sessions over an eight-month period before a leading securities class action mediator and, later, the Special Master appointed by the Court.

5.      The resulting monetary award to the Class[1] – $20,115,000 – together with the substantial corporate governance reforms achieved through the Settlement constitute, I believe, an outstanding result.  The payment to the Class represents a recovery of well in excess of the median securities class action settlement last year, or in any recent year, *see* Exhibit B, Stephanie Plancich & Svetlana Starykh, *2008 Trends in Securities Class Actions* (NERA Dec. 2008), at 9.

6.      In addition, the Settlement provides a mechanism for distribution to the Class (among other Take-Two investors) of $6.5 million in funds that the SEC recovered from Defendant Brant in a civil enforcement action and had sought to have paid over to the United States Treasury prior to being advised of the prospective settlement of this Action.

## The Plaintiffs

7.      Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, and New York City Fire Department Pension Fund (the "NYC Funds") were appointed Lead Plaintiffs by Order of the Court dated July 12, 2006.

8.      The NYC Funds comprise the largest municipal employee retirement system in the United States and they devote significant resources to performing their role as appointed Lead Plaintiffs in securities class action litigation.  All Court filings were reviewed by counsel from the New York City Comptroller's Office and Law Department prior to submission, and all

---

[1]   The "Class" consists of: All individuals and entities who purchased or otherwise acquired the common stock of Take-Two between December 17, 2002, through July 10, 2006, inclusive and were damaged thereby, excluding any Defendants; members of the immediate families of any Individual Defendant; any parent, subsidiary, affiliate, partner, officer, or director of any Defendant who is not an individual; any entity in which any such excluded person has a controlling interest; and the heirs, successors, and assigns of any such excluded person or entity.

significant decisions with respect to the conduct of this Action and settlement negotiations were made by counsel from those offices in consultation with my Firm.  Moreover, the respective Boards of Trustees of each of the NYC Funds approved the Settlement's terms.

9.      Plaintiff State-Boston Retirement System is the largest city retirement system in the Commonwealth of Massachusetts.  Its executives were also kept apprised of this Action through periodic reports and other communications.

10.      Plaintiffs will receive their *pro rata* distribution from the Net Settlement Fund in accordance with the Plan of Allocation set forth in the Notice of Proposed Settlement of Class Action, Application for Attorneys' Fees and Expenses and Fairness Hearing and Notice of Availability of Funds Recovered by the SEC (the "Notice"), along with all other Class Members, and nothing else.

## The Allegations in this Action

11.      Take-Two is a global publisher, developer and distributor of interactive entertainment software, hardware, and accessories.

12.      In this Action, Plaintiffs have alleged, *first*, that Take-Two and the other Defendants made misstatements and omissions in connection with the intentional backdating of stock options granted to its directors and senior management, and that Take-Two's quarterly and annual financial statements were rendered false and misleading thereby.  Plaintiffs have further alleged that the effect of options backdating was highly material, resulting in an overstatement of Take-Two's earnings by 20% in fiscal year 2002, 11% in fiscal year 2003, and 5-6% in fiscal years 2004 and 2005.

13.      Plaintiffs have also alleged in this Action that Defendants fraudulently misrepresented that their product, GTA:SA – which alone accounted for more than 20% of the

Company's revenues in 2004 and 2005 – complied with the rating system of the video game industry's rating organization, the Entertainment Software Ratings Board (the "ESRB"). Plaintiffs have alleged that, in fact, undisclosed to the public and investors, Defendants inserted sexual content into GTA:SA in the form of two participatory "Sex Minigames" in which a video game character controlled by the player performs sexual acts.  Plaintiffs also allege that the Sex Minigames were made inaccessible during normal gameplay and that GTA:SA was assigned a "Mature" rating by the ESRB, allowing it broader distribution than if it had been accurately rated to reflect the existence of the Sex Minigames in its code.  Plaintiffs further allege that unrelated third parties created a computer "patch" or "mod" that allowed users access to the Sex Minigames and subsequently became widely available within weeks of GTA:SA's release. Finally, plaintiffs allege that several large retailers withdrew all existing copies of GTA:SA because of this coding, and the ESRB re-rated the game, subjecting Take-Two to alleged substantial remedial costs, lost revenues and injury to its shareholders from the resulting material declines in the value of Take-Two's common stock.

### Procedural History of the Action

14.     The first of the actions comprising this Action was filed on February 1, 2006.  On July 12, 2006, the Court consolidated all related class actions under the caption set forth above, and appointed the NYC Funds as Lead Plaintiffs and Labaton Sucharow LLP as Lead Counsel. Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") on September 11, 2006.

15.     In December 2006 and January 2007, Take-Two announced the conclusions of an internal investigation into options backdating, finding that, among other things:

> Between April 1997 and August 2003, [Defendant] Brant engaged
> in a pattern and practice of backdating options, and during such

period, a significant number of option grants appear to have been
backdated.

16.     Take-Two's internal investigation also found that:

> The Company, in granting options, failed in many cases to comply
> with the terms of its Stock Option Plans, did not maintain adequate
> control and compliance procedures for option grants, and did not
> generate or maintain adequate or appropriate documentation of
> such grants. In addition, the Compensation Committee abdicated
> its option granting responsibilities and permitted [Brant] to control
> and dominate the granting process.

17.     Take-Two also announced its intention to restate its financial statements to correct
for the effects of options backdating, and on January 3, 2007, the Court entered a stipulated
scheduling order providing that briefing of motions to dismiss the CAC would be adjourned in
anticipation of such restatement.

18.     Thereafter, Brant pled guilty to a felony charge of falsifying business records in
New York County Supreme Court and entered into a civil settlement with the SEC, pursuant to
which he paid more than $6 million in disgorgement, interest and penalties (including interest
subsequently accrued thereon, the "SEC Funds").  Take-Two then issued an earnings restatement
on March 30, 2007, and on April 16, 2007, Plaintiffs filed their Consolidated Second Amended
Class Action Complaint ("SAC").

19.     Thereafter, Defendants moved to dismiss the SAC, and on April 16, 2008, the
Court denied in part and granted in part Defendants' motions and granted Plaintiffs leave to
amend.

20.     During the summer of 2008, the parties engaged in extensive motion practice
before the Court with respect to Plaintiffs' application for leave to inspect the computer code for
GTA:SA without being held to have violated the license agreement applicable thereto, and the
Court then appointed Special Master Charles Moerdler ("Mr. Moerdler") to adjudicate the

parties' dispute.  Ultimately, Plaintiffs were allowed access to such code pursuant to an agreement entered into with Take-Two.

21.     Also during the summer of 2008, after the Court rendered its decision denying in part and granting in part Defendants' motions to dismiss the SAC, the parties first discussed settlement.

22.     Plaintiffs, however, noted the absence of any discovery to date, and conditioned entry into settlement discussions on review of the documents previously produced by Take-Two to government agencies investigating the subject matters of the Action.  After extensive negotiations, Take-Two agreed to provide the following documents to Plaintiffs after they filed their Third Amended Complaint ("TAC"):  (1) documents relevant to options backdating by directors, officers and employees provided by Take-Two or by the Special Litigation Committee of Take-Two's Board of Directors (the "SLC") to the New York County District Attorney's Office ("Manhattan DA") and the SEC, excepting documents that were privileged or protected; (2) documents provided by Take-Two or by the SLC to the Manhattan DA or the Federal Trade Commission relating to the inclusion of sexually-themed content in GTA:SA and the disclosure of such content, excepting documents that were privileged or protected, and further excepting proprietary computer code; (3) logs identifying documents that were responsive to the requests received from the above-mentioned governmental agencies but were being withheld on the basis of privilege or otherwise, provided however, that no logs needed to be provided with respect to documents created after Take-Two commenced internal investigations into the subject matter of each request for documents; and (4) the subpoenas or other document requests from the above-mentioned governmental agencies to which Take-Two's productions were responsive.

23.     In light of the existence of the discovery stay imposed by the Private Securities Litigation Reform Act, Take-Two provided Plaintiffs with the foregoing production under a "locked room" arrangement which precluded Plaintiffs' use of the documents in litigation if settlement discussions were unsuccessful.

24.     On September 12, 2008, Plaintiffs filed their TAC and the parties thereafter briefed a motion directed to the legal sufficiency of such complaint, which motion remains *sub judice*.

25.     After Plaintiffs filed their TAC, commencing in late September 2008, Plaintiffs conducted a review of the production by Take-Two, which totaled approximately 1.4 million pages, and completed such review in late November 2008, several weeks before the dates on which the parties had scheduled mediation.

26.     In preparation for mediation, the parties prepared detailed mediation briefs and Plaintiffs arranged for their damages consultant, Forensic Economics, Inc., to prepare a comprehensive event study and analysis of damages with respect to each of their claims.

27.     On December 9-10, 2008, the parties met in Boston and conducted two full days of mediation before Professor Eric Green of Resolutions LLC.  Such mediation, however, was unsuccessful.

28.     Thereafter, the parties conducted mediation before Mr. Moerdler, who held full or substantial part-day in-person mediations on the following dates:  February 24, 2009, March 9, 2009, May 12, 2009, June 10, 2009, and August 13, 2009.  At each of these mediation sessions, Lead Counsel for Plaintiffs was accompanied by counsel for Lead Plaintiffs from the New York City Law Department, and, on some occasions, counsel from the New York City Comptroller's Office.

29.     During the course of the mediation process, in April 2009, Take-Two entered into settlements relating to options backdating with the SEC and Manhattan DA, pursuant to which Take-Two agreed to pay $3.3 million in fines and penalties, undertake a review of its corporate governance and executive compensation programs and policies, and institute certain internal control reforms.

30.     After such settlements, the parties negotiated at length regarding whether and how much such settlements should increase the amount for which this Action should be settled.

31.     The parties finally reached an agreement in principle with respect to the financial component of the Settlement shortly after the May 12, 2009 mediation session with Mr. Moerdler.  The subsequent discussions concerned corporate governance, and resulted in a complete agreement in principle shortly following the August 13, 2009 mediation session with Mr. Moerdler.  On August 31, 2009, Plaintiffs and Take-Two entered into a Memorandum of Understanding, setting forth the material terms of the Settlement.

32.     On September 2, 2009, this Action was transferred to this Court after the passing of the Honorable Shirley Wohl Kram.

33.     On October 30, 2009, the parties entered into a definitive Stipulation and Agreement of Settlement (the "Settlement Stipulation") memorializing the Settlement.

### Terms of the Proposed Settlement

34.     Pursuant to the Settlement, Take-Two agreed to pay or cause its insurers to pay $20,115,000 to the Class (the "Settlement Amount").  The Settlement Amount is not subject to a "claims made" provision; no part of the Settlement Amount will be repaid to Take-Two after the Settlement becomes effective.  The Settlement Amount is to be paid into escrow within ten (10)

business days after entry of the Preliminary Approval Order, subject to full repayment (except for certain notice costs) if the Settlement does not thereafter become effective.

35.     In addition to payment of the Settlement Amount, the Settlement provides for certain corporate governance reforms, as follows:

(a)     *Recovery of Improperly-Awarded Incentive Compensation*.  Take-Two is required to adopt a policy, implemented through the insertion of appropriate contractual provisions in agreements with specified senior executives, commonly referred to as "clawback" provisions, providing for the recovery of bonus or incentive compensation paid to such executives in the event that such compensation was awarded based on financial results later determined to have been erroneously reported as a result of fraud or other knowing misconduct by the executive.

(b)     *Stockholder Vote on Takeover Defenses*.  Take-Two is required to adopt a policy requiring that its Board of Directors submit any arrangement providing for dilution of ownership of a person seeking control of the Company (commonly described as a "stockholder rights plan" or "poison pill") that is greater than 12 months in duration to a vote of stockholders at the first annual meeting of stockholders to be held 90 days or more after the effective date thereof, provided, however, that if such an arrangement has been terminated as of the date of such meeting, no vote shall be held.

(c)     *Advance Notice of Matters to Be Presented for Stockholder Vote*.  Take-Two is required to adopt a bylaw providing that no business may be properly brought before an annual meeting of stockholders by a person other than a stockholder unless such matter has been included in the proxy solicitation materials issued by the Company, excepting procedural matters concerning the conduct of such annual meeting.

36.     The only agreements between Plaintiffs and Defendants with respect to the Settlement are the Settlement Stipulation, annexed hereto as Exhibit A, and a supplemental agreement concerning Take-Two's right to terminate the Settlement if Class members above a specified threshold elect to opt out of the Settlement.  (*See* Settlement Stipulation ¶ 14(c)).

37.     As set forth in the Notice, the Settlement Amount, less attorneys' fees and expenses awarded by the Court, notice and administration costs, and any taxes payable from the Settlement Amount (the "Net Settlement Fund"), will be distributed to Authorized Claimants (i.e., Class members who file timely and valid Proofs of Claim) in accordance with the Plan of Allocation described fully in the Notice.  The Plan of Allocation, which was drafted with the assistance of Plaintiffs' damages consultant, takes into account the various dates on which alleged misstatements and actionable omissions occurred, and treats all Class members in a fair and equitable manner.

## The SEC Funds

38.     In addition to the Net Settlement Fund, Class members (together with other investors who purchased Take-Two common stock between February 6, 1998 and December 16, 2002) will be eligible to obtain payment from the SEC Funds, now totaling $6.5 million, less costs of administration related to such funds (not to exceed $250,000).  Disbursement of the SEC Funds is subject to approval by the Honorable Denise L. Cote, before whom the SEC enforcement action, titled *SEC v. Brant*, No. 1:07-cv-01075-DLC, is pending.  Paragraphs 6 to 9 and 23 of the proposed Preliminary Approval Order make various provisions for joint administration of the Settlement Amount and the SEC Funds, all subject to the concurrence of Judge Cote.

## Scheduling the Fairness Hearing

39.     Paragraph 5 of the proposed Preliminary Approval Order contains space for insertion of a date for a fairness hearing with respect to the proposed Settlement.  To permit joint notice to be given to Class members and other eligible investors (with respect to the SEC Funds), and to allow adequate time to provide notice to investors in advance of the fairness hearing and fulfill the notice requirements of the Class Action Fairness Act, Plaintiffs respectfully request that, if the Court determines to enter the proposed Preliminary Approval Order, the hearing be set for a date at least 90 days after the later to occur of (1) the Court's entry of such Order and (2) the approval by Judge Cote of disbursement of the SEC Funds as provided in the Notice.  We have been informed by the SEC that it anticipates submitting a motion to Judge Cote for such approval prior to the end of November.

## Exhibits

40.     Annexed hereto as Exhibit A is a true and correct copy of the Settlement Stipulation.

41.     Annexed hereto as Exhibit B is a true and correct copy of Stephanie Plancich & Svetlana Starykh, *2008 Trends in Securities Class Actions* (NERA Dec. 2008).

42.     Annexed hereto as Exhibit C is a true and correct copy of the firm resume of Labaton Sucharow LLP.

## Conclusion

43.     For the foregoing reasons, I respectfully request that the Court grant Plaintiffs' unopposed motion for entry of the Preliminary Approval Order, which Order would (i) preliminarily certify a Class for purposes of settlement only, (ii) approve the proposed manner and form of notice to the proposed Class and other investors who may be entitled to a

distribution of the SEC Funds, (iii) preliminarily approve the proposed settlement, (iv) schedule

a fairness hearing, and (v) govern certain related administrative matters.

Respectfully submitted,

_____

JONATHAN M. PLASSE

Sworn to and subscribed before me
this 20th day of November, 2009

_____
NOTARY PUBLIC

ETHAN DAVID WOHL
Notary Public, State of New York
No. 02WO5055964
Qualified in Kings County
Commission Expires February 20, 2010