UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| IN RE TAKE-TWO INTERACTIVE SECURITIES LITIGATION | ) ) ) ) ) |

No. 1:06-cv-00803-RJS

ECF Case

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR AN ORDER (i) PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES ONLY, (ii) APPROVING THE PROPOSED MANNER AND FORM OF NOTICE TO THE CLASS AND CERTAIN SEC CLAIMANTS, (iii) PRELIMINARILY APPROVING THE PROPOSED SETTLEMENT, (iv) SCHEDULING A FAIRNESS HEARING, AND (v) GOVERNING CERTAIN RELATED ADMINISTRATIVE MATTERS**

**LABATON SUCHAROW LLP**
Jonathan M. Plasse (JP-7515)
Ethan D. Wohl (EW-0806)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Lead Counsel for Lead Plaintiffs and Attorneys for the Additional Class Representative*

**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Carolyn Wolpert
Keith Snow
100 Church Street
New York, New York 10007
Tel: (212) 788-0303
Fax: (212) 788-0367

*Attorneys for Lead Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.  THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR
PRELIMINARY APPROVAL .......................................................................... 3

    A.  Factors to Be Considered ........................................................................ 3

        1.  The Proposed Settlement Is the Result of Well-Grounded,
Good Faith, Arm's-Length Negotiations ...................................... 5

        2.  The Proposed Settlement Falls Well Within the Range of
Reasonableness and Warrants Notice and a Hearing on
Final Approval ............................................................................ 6

        3.  The Settlement Has No Obvious Deficiencies............................. 7

II.  THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS
FOR SETTLEMENT PURPOSES ..................................................................... 8

    A.  Standards Applicable to Class Certification ........................................... 8

    B.  This Action Meets the Requirements of Rule 23(a) ............................... 9

        1.  Rule 23(a)(1): The Class Is So Numerous That Joinder of
All Members Is Impracticable .................................................... 9

        2.  Rule 23(a)(2): Questions of Law or Fact Are Common to
the Class..................................................................................... 9

        3.  Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical of the
Claims of Other Class Members................................................ 10

        4.  Rule 23(a)(4): Lead Plaintiffs Will Adequately Protect the
Interests of the Class................................................................ 11

    C.  This Action Meets the Requirements of Rule 23(b)(3) ........................ 12

        1.  Questions of Law or Fact Common to the Class
Predominate Over Any Questions Affecting Only
Individual Members................................................................. 12

        2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy............................ 14

    D.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g).................................................................................................................. 15

IV.    THE COURT SHOULD APPROVE THE PROPOSED MANNER AND FORM OF CLASS NOTICE AND RELATED ADMINISTRATIVE MATTERS PROVIDED FOR IN THE PROPOSED PRELIMINARY APPROVAL ORDER ................................................................................................... 16

CONCLUSION................................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128  (1972).......................................................................................14

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52, 60 (2d Cir. 2000)......................................................................11

*Barone v. Safway Steel Products, Inc.*,
    No. 03-cv-4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)....................18

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...................................................................................6, 13

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) .....................................................................14

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006) .................................................................3, 5

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) ...................................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................................4

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006).............................................................................8

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ..................................................................13

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................................................6

*In re Flag Telecom Holdings Ltd., Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) ..................................................................10

*In re Initial Public Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ....................................................................3

*In re Initial Public Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................4, 9

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)..........................................................3, 8, 10

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................3

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) .......................................................8

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................16

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir.), *cert. denied*, 126 S. Ct. 421 (2005) ....................6

*In re Luxottica Group S.P.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) .......................................................7

*Marisol A. v. Giuliani*,
   126 F.3d 372  (2d Cir. 1997).............................................................9

*In re Med. X-Ray Film Antitrust Litig.*,
   No. 93-cv-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ...........5

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................5

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)...........................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .....................................................4, 5

*In re NTL, Inc. Sec. Litig.*,
   No. 02-CV-3013, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006)................8

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) .......................................................18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................3, 5

*In re Qiao Xing Sec. Litig.*,
   No. 07-CV-7097, 2008 WL 872298  (S.D.N.Y. Apr. 2, 2008)................8

*Reade-Alvarez v. Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................................4, 5, 7

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..............................................................................................11

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)..........................................................................................9, 10

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................................7

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99-CV-0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) .................................8

*Taft v. Ackermans*,
   No. 02-cv-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...................................3

*In re Telik, Inc. Sec. Litig.*,
   No. 07-CV-4819, 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008)............................14

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .........................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................3, 5, 18

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .....................................................................................11

## STATUTES

15 U.S.C. § 78u-4(a)(7) .............................................................................................................16

Fed. R. Civ. P. 23(a)(4)..............................................................................................................11

Fed. R. Civ. P. 23(c)(2)..........................................................................................8, 16, 17, 18

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................. 16, 17

Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq* ...........16

Fed. R. Civ. P. 23(e)(1)..............................................................................................................16

## OTHER AUTHORITIES

Stephanie Plancich & Svetlana Starykh,
   2008 Trends in Securities Class Actions (NERA Dec. 2008)......................................6

## PRELIMINARY STATEMENT

Lead Plaintiffs New York City Employees' Retirement System, New York City Police Pension Fund, and New York City Fire Department Pension Fund, together with plaintiff State-Boston Retirement System (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion for an Order pursuant to Federal Rule of Civil Procedure 23(e) (i) preliminarily certifying a Class[1] for purposes of settlement only, (ii) approving the proposed manner and form of notice to the proposed Class and to certain other parties who may be entitled to a distribution of funds recovered by the Securities and Exchange Commission ("SEC"), (iii) preliminarily approving the proposed settlement (the "Settlement") of the above-captioned consolidated class action (this "Action") on the terms set forth in the parties' Stipulation and Agreement of Settlement ("Settlement Stipulation") dated October 30, 2009, (iv) scheduling a fairness hearing, and (v) governing certain related administrative matters (all as set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice to the Class and SEC Claimants (the "Preliminary Approval Order") submitted herewith).

The facts underlying this Action and procedural history thereof are set forth in the accompanying Affidavit of Jonathan M. Plasse ("Plasse Affidavit"), sworn to on November 20, 2009, and in the interest of brevity, are not repeated at length herein.

Plaintiffs submit that the proposed Settlement, which provides for dismissal of this Action in consideration of payment by Defendants of $20,115,000, together with certain substantial corporate governance reforms and distribution to the Class (among other Take-Two

---

[1]    The proposed "Class" consists of: All individuals and entities who purchased or otherwise acquired the common stock of Take-Two between December 17, 2002, through July 10, 2006, inclusive and were damaged thereby, excluding any Defendants; members of the immediate families of any individual Defendant; any parent, subsidiary, affiliate, partner, officer, or director of any Defendant who is not an individual; any entity in which any such excluded person has a controlling interest; and the heirs, successors, and assigns of any such excluded person or entity.

investors) of $6.5 million in funds that the SEC recovered from Defendant Ryan Brant in a civil enforcement action, is an excellent result for the Class, and should be preliminarily approved.

As detailed below, the Settlement followed several years of litigation directed at the merits of Plaintiffs' claims, including briefing of two rounds of motions directed at the legal sufficiency of Plaintiffs' complaints, extensive private investigation by Plaintiffs' counsel's investigative staff, and review of more than 1.4 million pages produced by Take-Two at Plaintiffs' request as a condition to entry into settlement discussions, followed by seven in-person mediation sessions over an eight-month period before a leading securities class action mediator and, later, the Special Master appointed by the Court.

Plaintiffs submit that in furtherance of the proposed Settlement, it is also appropriate for this Court to preliminarily certify the Class for settlement purposes.  The parties have stipulated to certification of a class for settlement purposes after protracted negotiations between experienced counsel dealing at arm's-length and under the auspices of a Special Master appointed by the Court, and there exists no likelihood of abuse of the class action device. Moreover, as set forth below, all of the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

The Court should also approve the forms of Class notice (the "Notice") and summary notice annexed to the proposed Preliminary Approval Order, as they will provide the best practicable notice under the circumstances.

Finally, in furtherance of the Settlement, the Court should set a date and time for a fairness hearing with respect thereto, and approve the other miscellaneous administrative matters provided for in the proposed Preliminary Approval Order.

Accordingly, and for the reasons discussed more fully below, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order.

## ARGUMENT

## I. THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

### A. Factors to Be Considered

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the sound discretion of the district court. *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000). In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig*., 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted); *see also Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007) (same); *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources. Accordingly, this Court will take into consideration such public policy concerns in exercising its discretion."); *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits.") (citations omitted).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.' First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *In re Initial Public Offering Sec. Litig*., 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *see also Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 (E.D.N.Y. 2006). During this first

step, a court must consider whether the settlement warrants preliminary approval, providing

notice to the proposed class and the scheduling of a final settlement hearing.  In the second step,

after notice of the proposed settlement has been provided to the class and a hearing has been held

to consider the fairness and adequacy of the proposed settlement, the court considers whether the

settlement warrants "final approval."  *Id.*[2]

As explained by Judge Sweet:

> In considering preliminary approval, courts make a preliminary
> evaluation of the fairness of the settlement, prior to notice.  Where
> the proposed settlement appears to be the product of serious,
> informed, non-collusive negotiations, has no obvious deficiencies,
> does not improperly grant preferential treatment to class
> representatives or segments of the class and falls within the range
> of possible approval, preliminary approval is granted.  Once
> preliminary approval is bestowed, the second step of the process
> ensues.

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citations

omitted); *see also In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Accordingly, at this stage, the Court should determine whether the proposed Settlement is

the product of an informed, arm's-length negotiation and free of obvious deficiencies and, thus,

whether it is within the *range* of what might later be found fair, reasonable, and adequate.

---

[2] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation being settled; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the litigation as a class action through trial; (7) ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of best possible recovery; and (9) the range of reasonableness of the settlement in relation to a possible recovery in light of the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

While some courts within the Second Circuit keep these factors in mind when weighing preliminary approval, "a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is within the range of possible approval."  *Reade-Alvarez v. Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *Bourlas*, 2006 WL 2513021, at *7-8 (finding *Grinnell* factors premature); *cf. In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191-99 (S.D.N.Y. 2005) (granting preliminary approval without substantive discussion of *Grinnell* factors).

*Bourlas*, 2006 WL 2513021, at *7; *Reade-Alvarez,* 237 F.R.D. at 34 (same). In essence, the

Court should determine whether the settlement is "at least sufficiently fair, reasonable and

adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176

F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200,

209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to

notify the class members of the proposed settlement and to proceed with a fairness hearing.")

(internal quotation marks omitted). In other words, "preliminary approval should be granted and

notice of the proposed settlement given to the class if there are no obvious deficiencies in the

proposed settlements." *In re Med. X-Ray Film Antitrust Litig.*, No. 93-cv-5904, 1997 WL

33320580, at *6 (E.D.N.Y. Dec. 26, 1997).

　　　　The circumstances underlying the proposed Settlement fully support preliminary

approval.

### 1.　　The Proposed Settlement Is the Result of Well-Grounded, Good Faith, Arm's-Length Negotiations

　　　　"A 'presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116, 116 (2d

Cir. 2005); *see also In re Merrill Lynch Tyco Research Sec. Litig*., 249 F.R.D. 124, 133

(S.D.N.Y. 2008) (same); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)

(same).

　　　　As discussed in the Plasse Affidavit at paragraphs 21 through 31, the proposed Settlement

is the product of extensive arm's-length negotiations that occurred between counsel for the

parties over a number of months, after extensive document discovery and independent

investigation by Plaintiffs, and was conducted under the auspices of Court-appointed Special

Master Charles Moerdler.  There is, therefore, an ample basis to conclude that the Settlement is

the product of vigorous, informed, and non-collusive negotiations.

> ### 2.    The Proposed Settlement Falls Well Within the Range of Reasonableness and Warrants Notice and a Hearing on Final Approval

The proposed $20,115,000 payment pursuant to the Settlement represents a recovery of

well in excess of the median securities class action settlement last year, or in any recent year.

*See* Plasse Aff. Ex. B, Stephanie Plancich & Svetlana Starykh, *2008 Trends in Securities Class*

*Actions* (NERA Dec. 2008), at 9.  The Settlement also provides a mechanism for distribution to

the Class (among other Take-Two investors) of $6.5 million in funds that the SEC recovered

from Defendant Brant in a civil enforcement action.  The SEC had sought to have such funds

paid over to the United States Treasury prior to being advised of the prospective settlement of

this Action, and agreed to allow them to be paid to investors only because the cost of doing so

would be reduced through joint administration with the Settlement funds.  The Settlement is thus

well within the range of what should be deemed a fair, reasonable and adequate settlement,

particularly taking into account (1) the risks inherent in litigating a securities class action through

trial; and (2) the particular risks relating to materiality and loss causation at issue in this Action,

which were closely analyzed by Plaintiffs prior to entry into the Settlement.[3]  As numerous

courts have recognized, securities class actions are by their nature legally and factually complex

---

[3] At trial, Plaintiffs would face the risk that a jury would find the alleged misstatements were not material, given the argument that non-cash compensation costs are not important to investors.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (a statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.")  Defendants would also have argued, as they did at mediation, that the Class could not establish loss causation, because the observed share price declines were not caused by the fact of backdating or increased compensation costs, but by follow-on consequences thereof, including the costs and disruption of governmental and internal investigations.  *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir.) (proof that material misstatements caused plaintiffs' losses is a required element of a Rule 10b-5 claim) (citing 15 U.S.C. § 78u-4(b)(4)), *cert. denied*, 126 S. Ct. 421 (2005); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

and challenging.  *See In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306, 311-12 (E.D.N.Y.

2006) (noting the litigation being settled "involved numerous difficult legal and financial issues

typical in securities class actions"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281

(S.D.N.Y. 1999) ("In evaluating the settlement of a securities class action, federal courts,

including this Court, have long recognized that such litigation is notably difficult and notoriously

uncertain.").

In sum, Plaintiffs had developed a well-grounded understanding of the Class's claims and

associated litigation risks at the time they entered into the Settlement, and the Settlement is well

within the range of reasonableness.

### 3.     The Settlement Has No Obvious Deficiencies

There are also "no grounds to doubt [the Settlement's] fairness and no other obvious

deficiencies (such as unduly preferential treatment of class representatives or of segments of the

class, or excessive compensation for attorneys). . . ."  *Reade-Alvarez*, 237 F.R.D. at 33.  As

discussed above, the $20,115,000 recovery and corporate governance reforms achieved through

the Settlement constitute a significant and certain benefit for Class Members, and may well be as

good a recovery as could have been obtained even after trial.  As stated in the Plasse Affidavit at

paragraph 10, Plaintiffs will receive their *pro rata* distribution from the Net Settlement Fund in

accordance with the Plan of Allocation set forth in the Notice, along with all other Class

Members, and nothing else.

Accordingly, Plaintiffs respectfully urge the Court to preliminarily approve the

Settlement.

## II.    THE COURT SHOULD PRELIMINARILY CERTIFY
##         THE CLASS FOR SETTLEMENT PURPOSES

### A.    Standards Applicable to Class Certification

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *In re NTL, Inc. Sec. Litig.*, No. 02-cv-3013 (LAK) (AJP), 2006 WL 330113, at *4 (S.D.N.Y. Feb. 14, 2006) (Peck, J.) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (Scheindlin, J.). Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward." *Id.* In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

Because Plaintiffs seek class certification in the context of preliminary approval, the Court need only preliminarily certify the Class now, with a more thorough inquiry into the issues – to the extent raised by those with standing – being heard at the hearing for final approval. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendments to Rule 23(c)(1)"); *In re Qiao Xing Sec. Litig.*, No. 07-cv-7097, 2008 WL 872298 (DLC), at *1 (S.D.N.Y. Apr. 2, 2008) (Cote, J.) (certifying class on a preliminary basis until final determination at fairness hearing); *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99-cv-0962 (RCC), 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005) (Casey, J.) ("In the context of settlement, courts often provisionally certify the class along with preliminary approval of the settlement."); Manual for Complex

Litigation (4th) § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

### B.    This Action Meets the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): The Class Is So Numerous
#### That Joinder of All Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. This rule does not require that joinder of all parties be impossible, only that it be difficult or inconvenient. *In re IPO*, 243 F.R.D. at 84. Although "precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement." *Id.*

As of September 2008, when Plaintiffs filed their Third Amended Complaint with the Court, Take-Two had more than 72 million shares of common stock outstanding, and Plaintiffs' damages consultant, Forensic Economics, Inc., calculated the number of "damaged" shares held by Class members to be approximately 59.7 million. Under these circumstances, there is no reasonable doubt that the Class satisfies the numerosity requirement. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (Brieant, J.) ("[B]ecause Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands.").

#### 2.    Rule 23(a)(2): Questions of Law
#### or Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mean that all class members must make identical claims and arguments, but only that "plaintiffs' grievances share a common question of

law or fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001)

(quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). And "[w]here, as here, there

exists a common nucleus of operative facts affecting all members, common questions

unquestionably prevail." *Oxford*, 191 F.R.D. at 374 (finding commonality with respect to

securities claims).

Here, as is generally true in securities fraud class actions against issuers, common

questions of both law and fact abound. The central questions of whether the Defendants made

material false and misleading statements and omissions with the requisite mental state, whether

Class members relied on Defendants' statements in purchasing or selling Take-Two stock at

artificially inflated prices, and whether Class members suffered harm because of these statements

and omissions. are the same for each Class member. Therefore, the existence and nature of

Defendants' alleged liability are common to all Class members, and the claims of each Class

member arise from the same operative facts and share legal theories. *See, e.g., In re Flag

Telecom Holdings Ltd., Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007) (Conner, J.) (finding

common issues as to violations of federal securities laws, misrepresentations and omissions of

material fact, scienter, and damages satisfy commonality). As the court stated in *Oxford*,

"[w]here the facts as alleged show that [d]efendants' course of conduct concealed material

information from an entire putative class, the commonality requirement is met." 191 F.R.D. at

374.

### 3.    Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical of the Claims of Other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that "each

class member's claim arises from the same course of events, and each class member makes

similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376. Typicality

does not require, however, "that the situations of the named representative and the class members [be] identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (McMahon, J.). Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (Cote, J.) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1993)), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Moreover, the typicality and commonality requirements "tend to merge" in securities cases, suggesting that typicality generally will be found if commonality is found. *Marisol*, 126 F.3d at 376.

Here, Plaintiffs' claims are identical to those of the other members of the proposed Class. Plaintiffs, like all Class members, purchased Take-Two's publicly traded securities at what they allege to have been artificially inflated prices during the Class Period, and claim to have suffered damages because of Defendants' alleged material misconduct. Accordingly, the legal theories and evidence Plaintiffs would need to advance to prove their claims would simultaneously advance the claims of other Class members. The typicality requirement is therefore met.

### 4.    Rule 23(a)(4): Lead Plaintiffs Will Adequately Protect the Interests of the Class

Rule 23(a)(4), the adequacy of representation requirement, calls for two showings: (i) that Class counsel are qualified, experienced and generally able to conduct the litigation; and (ii) that the representative plaintiffs' interests are not antagonistic to those of the remainder of the Class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

*First,* Labaton Sucharow, Court-appointed Lead Counsel for Lead Plaintiffs, has demonstrated, we submit, that it is amply qualified, experienced, and able to conduct this litigation vigorously and effectively, and has zealously and ably represented Plaintiffs on behalf of the proposed Class for the last three years.[4]

*Second,* there is no genuine conflict or antagonism between the claims of the proposed Class representative and those of the other members of the proposed Class. Moreover, Plaintiffs – large institutional investors – have demonstrated themselves committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date.

Given that no conflicts exist between Plaintiffs' interests and those of other Class members, and that their counsel are able and competent lawyers in the area of securities class action litigation, the adequacy of representation requirement should be held to have been met.

### C.    This Action Meets the Requirements of Rule 23(b)(3)

#### 1.    Questions of Law or Fact Common to the Class Predominate Over Any Questions Affecting Only Individual Members

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id.* at 625.

---

[4]    As a result of the 2003 amendments to the Federal Rules, the issue of appropriate class counsel is guided by Rule 23(g) rather than Rule 23(a)(4). Accordingly, this issue is addressed in greater detail in Section IV.D below.

The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). This is undoubtedly true here.

The common questions of law and fact noted above clearly predominate over individual questions, because Defendants' alleged fraudulent conduct affected all Class members in the same manner (*i.e.*, through public filings with the SEC and other public statements) and generalized proof will be proper with respect to whether: (1) Defendants made material false and misleading statements and omissions regarding their practice of backdating options and the release and content of GTA:SA; (2) Defendants possessed the requisite scienter; (3) Take-Two's investors relied on Defendants' statements and omissions in purchasing or selling Take Two stock; and (4) Defendants' conduct caused the damages to the Class, or whether investor losses were instead caused by such matters as general market and industry conditions. *See, e.g., Dietrich v. Bauer*, 192 F.R.D. 119, 127-28 (S.D.N.Y. 2000) (Sweet, J.) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").[5]

Moreover, whether any class member relied on Defendants' conduct does not raise individual issues in this case because reliance is presumed pursuant to (i) the fraud on the market doctrine articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and (ii) the presumption of

---

[5]    The sole question of law or fact here that is not subject to "generalized proof" is the amount of each Class member's damages, which can be calculated relatively easily. Such individualized questions of damages are present in every securities class action and are no bar to class certification. *See, e.g., Visa Check*, 280 F.3d at 136; *Oxford*, 191 F.R.D. at 378.

reliance on material omissions set forth in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) also requires that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. Courts find that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically dispersed. The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001) (Cote, J.).

Here, the utility of presenting the claims asserted through the class action device is substantial, since Class members who have been injured number in at least the thousands, but few may have been damaged to a degree that would induce them to institute litigation on their own behalf. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (Sweet, J.).

Further, certification of the Class is the superior method to facilitate the resolution of Plaintiffs' claims. Without certification of a Class for settlement, Defendants could not obtain a Class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See In re Telik, Inc. Sec. Litig.*, No. 07-cv-4819 (CM), 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (McMahon, J.). Finally, Class certification also enhances the benefits available to the Class because it provides a mechanism for distribution of the funds recovered from Defendant Brant by the SEC, which was willing to make the funds available to the Class and other investors based upon Lead Counsel's

representation that such distribution could be made at only limited cost, by reason of its occurring in conjunction with the payment to the Class of the proceeds from the Settlement. Resolution of Plaintiffs' claims against Defendants through the proposed settlement Class is thus plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that the proposed Class meets the requirements of both 23(a) and 23(b) and should certify such Class.

### D.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Plaintiffs respectfully request that Labaton Sucharow, Court-appointed Lead Counsel for Lead Plaintiffs, be appointed counsel for the Class. As discussed above, Labaton Sucharow will continue to fairly and adequately represent the Class. Proposed Class Counsel are knowledgeable about the applicable law and experienced in handling class actions, have performed substantial work in vigorously pursuing the Class' claims to date, and have committed substantial resources to representing it. *See* Fed. R. Civ. P. 23(g)(1)(A).

Labaton Sucharow is among the nation's leading law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions since the enactment of the Private Securities Litigation Reform Act ("PSLRA"), including *In re General Motors Corp. Securities Litigation* ($303 million settlement), *In re El Paso Corporation Securities Litigation* ($285 million settlement), and *In re Waste Management, Inc. Securities Litigation*, ($457 million settlement). (*See* Plasse Aff. Ex. C.)

**IV.    THE COURT SHOULD APPROVE THE PROPOSED MANNER
AND FORM OF CLASS NOTICE AND RELATED
ADMINISTRATIVE MATTERS PROVIDED FOR IN THE
PROPOSED PRELIMINARY APPROVAL ORDER**

The Court should also approve the form and content of the Notice, Summary Notice and

Proof of Claim annexed to the proposed Preliminary Approval Order as Exhibits 1-3.  Consistent

with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises Class

members of the nature of this Action, the definition of the Class, the Class' claims, that a Class

member may enter an appearance through counsel if desired, that the Court will exclude from the

Class any Class member who timely and validly requests exclusion (and sets forth the procedures

and deadline for doing so), the binding effect of a judgment on Class members under Rule

23(c)(3), how to object to the proposed Settlement, and the availability of the funds recovered by

the SEC.

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA.

The Notice, *inter alia*, states the amount of the Settlement, determined in the aggregate and on an

average per-share basis; provides a statement from the parties concerning the issues about which

they disagree; provides a brief statement explaining the reasons why the parties are proposing the

Settlement; states the amount of attorneys' fees and maximum amount of expenses (both on an

aggregate and average per share basis) that Lead Counsel will seek, with a brief explanation

supporting such fees and expenses; provides the names, addresses, and telephone numbers for

the Claims Administrator and Lead Counsel who will be available to answer questions from

Class members; and includes a cover page summarizing all of this information.  *See* 15 U.S.C.

§ 78u-4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85

(S.D.N.Y. 2003) (discussing PSLRA notice requirements and approving notice where "cover

page" was actually two pages).

16

Additionally, both the Notice and the Summary Notice will disclose the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement, Plan of Allocation, or Fee and Expense Request to be sought by counsel. These disclosures are, we submit, thorough and should be approved by the Court.

The proposed Preliminary Approval Order also provides for appointment of A.B. Data Ltd. ("A.B. Data") as the proposed claims administrator. A.B. Data has been a claims administrator for almost 30 years and during that time, has administered hundreds of settlements, and distributed billions of dollars in claims. A.B. Data was selected by Lead Counsel, under supervision of Lead Plaintiffs, through a competitive bidding process involving five well-qualified claims administration firms, in which A.B. Data was the low bidder. A.B. Data also agreed to concurrently administer the distribution of the funds recovered by the SEC at a cost not to exceed $250,000.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The proposed notice plan readily meets these standards. Lead Plaintiffs, through an experienced settlement and claims administrator, will cause the Notice and Proof of Claim form to be sent by first class mail to every Class Member who can be identified through reasonable effort. This will be accomplished principally by using record holder data produced by the transfer agent for Take-Two, and by contacting broker-dealers for the last-known names and addresses of potential Class

17

members.  The Summary Notice, which summarizes the essential Settlement terms and informs

readers how to obtain the full Notice, will be published once in the national edition of the *Wall*

*Street Journal.*

   This notice program clearly satisfies the requirements of Rule 23 and due process and

should be approved by the Court.  *See Barone*, 2005 WL 2009882, at *6; *Peters v. Nat'l R.R.*

*Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first

class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best

notice practicable under the circumstances.'")

### <u>CONCLUSION</u>

   For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order, in

the form of the proposed Preliminary Approval Order, (i) preliminarily certifying a Class for

purposes of settlement only, (ii) approving the proposed manner and form of notice to the

proposed Class and to other parties who may be entitled to a distribution of funds recovered by

the SEC, (iii) preliminarily approving the Settlement, (iv) scheduling a fairness hearing, and (v)

governing certain related administrative matters.

Dated: New York, New York                    Respectfully submitted,
       November 20, 2009
                                             LABATON SUCHAROW LLP


                                             By:    /s/ Jonathan M. Plasse
                                                 Jonathan M. Plasse (JP-7515)
                                                 Ethan D. Wohl (EW-0806)

                                             140 Broadway
                                             New York, New York  10005
                                             Tel:  (212) 907-0700
                                             Fax:  (212) 818-0477

                                             *Lead Counsel for Lead Plaintiffs and*
                                             *Attorneys for the Additional Class*
                                             *Representative*

18

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
Carolyn Wolpert
Keith Snow
100 Church Street
New York, New York 10007
Tel: (212) 788-0303
Fax: (212) 788-0367

*Attorneys for Lead Plaintiffs*