UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE TAKE-TWO INTERACTIVE
SECURITIES LITIGATION

No. 1:06-cv-00803-RJS

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED
MOTION TO AUTHORIZE DISTRIBUTION OF NET SETTLEMENT FUND**

**LABATON SUCHAROW LLP**
Jonathan M. Plasse (JP-7515)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Lead Counsel for Lead Plaintiffs and
Attorneys for the Additional Class
Representative*

**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Carolyn Wolpert
Keith Snow
100 Church Street
New York, New York 10007
Tel: (212) 788-0303
Fax: (212) 788-0367

*Attorneys for Lead Plaintiffs*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND............................................................................................... 2

ARGUMENT .................................................................................................................................. 5

    A.    The Court Should Authorize Distribution of the Net Settlement Fund to Authorized Claimants ................................................................................................ 5

    B.    The Court Should Authorize the Inclusion of Class Members Who Submitted Late Claims by April 15, 2011 ................................................................ 6

    C.    The Court Should Authorize Payment of A.B. Data's Fees and Expenses for Claims Administration ...................................................................................... 7

    D.    Payment of Balance of Attorneys' Fees Awarded by the Court.............................. 8

    E.    The Court Should Authorize the Reallocation of Any Residual, Unclaimed Balance of the Net Settlement Fund to Authorized Claimants if Economical and the Donation of Any Remaining Funds to an Appropriate Not-for-Profit Organization ....................................................................................... 8

    F.    Retention of Proof of Claim Forms and Other Documents ................................... 10

CONCLUSION............................................................................................................................. 11

## **TABLE OF AUTHORITIES**

Page

**CASES**

*In re "Agent Orange" Prod. Liab. Litig.*,
    821 F.2d 139 (2d Cir. 1987)......................................................................................7

*Jones v. Nat'l Distillers*,
    56 F. Supp. 2d 355 (S.D.N.Y. 1999).....................................................................9, 10

*In re Motorsports Merch. Antitrust Litig.*,
    160 F. Supp. 2d 1392 (N.D. Ga. 2001)..................................................................8, 9

*In re Neurontin Mktg. & Sales Practices Litig.*,
    244 F.R.D. 89 (D. Mass. 2007)................................................................................10

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    246 F.3d 315 (3d Cir. 2001)......................................................................................7

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ................................................................................8, 9

*Zients v. LaMorte*,
    459 F.2d 628 (2d Cir. 1972).......................................................................................6

**DOCKETED CASES**

*SEC v. Ryan Ashley Brant*,
    No. 1:07-cv-1075-DLC (S.D.N.Y. February 14, 2007 )..............................................3

*SEC v. Take-Two Interactive Software, Inc., et al.*,
    No. 1:05-cv-05443-DLC (S.D.N.Y. April 16, 2008)....................................................3

## PRELIMINARY STATEMENT

Lead Plaintiffs the New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Fire Department Pension Fund (collectively, "Lead Plaintiffs") and the State-Boston Retirement System (together with Lead Plaintiffs, "Plaintiffs"), on behalf of the Class, respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, authorizing, *inter alia*: (i) distribution of the Net Settlement Fund established by the settlement of this action to Authorized Claimants; (ii) the Claims Administrator to deem timely, otherwise eligible claims that were submitted after the September 21, 2010 claims filing deadline, but received on or before April 15, 2011; (iii) payment of outstanding fees charged and expenses incurred by the Claims Administrator in the amount of $436,301.62; (iv) payment of the balance of the attorneys' fees and expenses awarded to Lead Counsel, but withheld pending distribution of the Net Settlement Fund to the Class; (v) the Claims Administrator to reallocate to Authorized Claimants (including late claimants approved by the Court) any residual funds remaining (whether by reason of tax refunds, uncashed checks, or otherwise), provided such reallocation is economical, and thereafter to donate any remaining balance to a private, nonsectarian, not-for-profit organization; and (vi) the destruction of copies of Proofs of Claim, and all related paper documentation, after distribution of the Net Settlement Fund is completed.

The results of the settlement administration process confirm that the $20,115,000 Settlement is an excellent result for Class Members. The 5,044 Class Members who submitted properly documented proofs of claim stand to recover approximately 30 percent of their Recognized Losses, or approximately 25 percent after the Claims Administrator's and Lead

Counsel's fees and expenses are deducted. Either way, this is a very substantial level of recovery.

Pursuant to the Stipulation and Agreement of Settlement (the "Stipulation"), dated October 30, 2009, Defendants have no interest in the relief sought by this motion. Stipulation ¶ 11(a) ("Defendants shall have no role in or responsibility for administering the Settlement; no role in or responsibility for reviewing or challenging claims submitted; and no liability whatsoever to any person or entity including, but not limited to, Plaintiffs, other Class Members, any other plaintiffs, any Class Member's counsel, or Lead Counsel in connection with the administration of the Settlement."); ¶ 9(d) ("This is not a claims made settlement, *i.e.*, the Settlement Amount will not increase or decrease by reason of the amount or value of claims filed by Class Members. If all the conditions of the Stipulation are satisfied and the Effective Date occurs, none of the Settlement Fund will be returned to Defendants or their respective insurers. Defendants will have no involvement in reviewing or challenging claims of members of the Class."). Defendants do not oppose this motion.

## PROCEDURAL BACKGROUND

On October 14, 2010, this Court issued a Judgment and Order of Dismissal granting final approval to the $20,115,000 cash Settlement between and among Plaintiffs, on behalf of the Class, and Defendants Take-Two Interactive Software, Inc. ("Take-Two"), Rockstar Games, Inc., Ryan Brant ("Brant"), Paul Eibeler, Karl H. Winters, Todd Emmel, Robert Flug, Oliver R. Grace, Jr., Sam Houser and Terry Donovan (collectively, "Defendants"), under the terms set forth in the Stipulation, and dismissing this Action with prejudice. (Docket No. 178.)

Together with the Final Judgment, this Court also issued an Order Approving Plan of Allocation (Docket No. 176), and an order approving the Notice of Proposed Settlement of Class

2

Action, Application for Attorneys' Fees and Expenses and Fairness Hearing ("Notice"), which was mailed to all Class Members who could be identified through reasonable effort, (Docket No. 175).

Defendants caused the gross Settlement Amount to be wire-transferred to an escrow account maintained by Lead Counsel at Citibank, N.A.  Consistent with the terms of the Stipulation, Lead Counsel caused these funds to be invested in interest-bearing, U.S. Government-backed securities.  As of May 31, 2011, the value of Net Settlement Fund, including accrued interest, was approximately $18,154,628.  The Net Settlement Fund continues to accrue interest daily.  (*See* Declaration of Jonathan M. Plasse in Support of Lead Plaintiffs' Unopposed Motion to Authorize Distribution of Net Settlement Fund, dated June 29, 2011 ("Plasse Decl."), ¶ 3.)

The Stipulation provides for the distribution of the Net Settlement Fund, in accordance with the Court-approved Plan of Allocation, among Authorized Claimants who purchased or otherwise acquired the common stock of Take-Two from December 17, 2002 through July 10, 2006, inclusive, and were damaged thereby.  On behalf of Lead Plaintiffs, Lead Counsel retained A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator.  A.B. Data has extensive experience in handling the administration of complex settlements of securities class actions.  The Court approved the selection of A.B. Data in its Order dated June 29, 2010.  (Docket No. 161.)

In addition to this Action, the Securities and Exchanged Commission ("SEC") resolved claims against Take-Two, and certain of the individual defendants in two civil actions: *SEC v. Take-Two Interactive Software, Inc., et al.*, 1:05-cv-05443-DLC (S.D.N.Y.) (the "Fair Fund Action") and *SEC v. Ryan Ashley Brant*, No. 1:07-cv-1075-DLC (S.D.N.Y.) (the "Brant

3

Action").  The Courts in these actions issued their final judgments resolving these actions on June 13, 2005 and February 16, 2007, respectively.

In order to avoid duplicative administrative costs, Lead Counsel and the SEC agreed that A.B. Data would jointly distribute the funds for all three settlements using the data gathered during the administration of this Settlement.  The Fair Fund Action and the Brant Action have been authorized to be included in this joint administration for purposes of distribution and A.B. Data has also been appointed distribution agent in the SEC settlements.  While the funds from the three settlements will be jointly distributed by A.B. Data, the funds from the SEC settlements are not part of the Net Settlement Fund and are governed by separate court-approved Plans of Distribution.  The funds from the SEC settlements shall not be used to pay any attorneys' fees and expenses awarded to Lead Counsel, and any residual SEC funds remaining after the distributions to Authorized Claimants will be paid to the United States Treasury.  A.B. Data will separately account for the money distributed for each fund.  Upon entry of the order authorizing distribution of the Net Settlement Fund in this Action, the SEC will submit requests to transfer the funds in the SEC actions to the joint distribution account.  Once the orders have been entered and the funds sent to A.B. Data, distribution of all three settlements will begin.  (See Affidavit of Michelle M. La Count, Esq. in Support of Lead Plaintiffs' Unopposed Motion to Authorize Distribution of Net Settlement Fund, dated June 27, 2011 ("La Count Aff."), ¶ 4.)

As set forth in the La Count Affidavit, A.B. Data, under the direction of Lead Counsel, provided notice of the pendency and settlement of the Action to potential members of the Class (as stated in an affidavit previously filed with the Court), processed Proof of Claim forms and calculated Recognized Losses consistent with the Court-approved Plan of Allocation.  A.B. Data

has and continues to handle shareholder inquiries, communications and claims in the Settlement. Through April 15, 2011, A.B. Data received and reviewed 23,864 claims.

A.B. Data has completed the processing of claims, including claims submitted after the September 21, 2010 claims filing deadline, and related work. Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants on a *pro rata* basis in accordance with the Plan of Allocation.

## ARGUMENT

### A. The Court Should Authorize Distribution of the Net Settlement Fund to Authorized Claimants

As set forth in the La Count Affidavit, A.B. Data reviewed and processed 23,864 claims submitted by potential Class Members. La Count Aff. ¶ 11 and Exhibit N. A.B. Data has prepared detailed ledgers of: (i) all valid and timely filed claims by Authorized Claimants; (ii) claims that were submitted after the filing deadline but by April 15, 2011 that are otherwise valid ("Late Claims"); and (iii) rejected claims that were deemed ineligible. Exhibit N to the La Count Aff.: Parts One, Two and Three, respectively.

A total of 22,236 claims were received with a postmark on or before the Court-approved claims filing deadline of September 21, 2010. La Count Aff. ¶ 28. Of these, 4,859 claims were deemed timely filed and valid. *Id*. and Exhibit N, Part One. A.B. Data made substantial efforts to contact claimants that had submitted deficient claims and instruct them on how to cure any such deficiencies. A.B. Data mailed a total of 840 deficiency letters that explained the reason the claim was deficient, what steps the claimant should take to perfect the deficient claim and notifying the claimant that unless the deficiency was corrected by the date set forth in the letter, that the claim would be rejected. *Id*. at ¶¶ 12-17 and Exhibits A, B, C, D and E (sample deficiency letters).

5

Of the 23,864 claims received, A.B. Data determined that 19,006 were ineligible to participate in the Settlement after providing opportunities to cure, and sent rejection letters to those claimants. La Count Aff. at ¶ 12 and Exhibit N, Part Three. The rejection letters explained the reason the claim was being rejected and informed the claimant of the right to contest the rejection of their claim and request court review of the disposition of their claim. *Id.* at ¶¶ 18-23 and Exhibits F, G, H, I J, K (sample rejection letters). To date, A.B. Data received a total of 17 objections by claimants to their rejected status. *Id.* at ¶ 24. A.B. Data contacted each of these claimants by telephone and/or written correspondence and resolved all of the objections. *Id.* To confirm the resolution of these objections, A.B. Data mailed follow-up letters. *Id.* and Exhibits L and M (sample letters).

Accordingly, Lead Plaintiffs respectfully request that the Court should authorize final distribution of the Net Settlement Fund to the 4,859 Authorized Claimants who submitted timely and valid claims.

**B.     The Court Should Authorize the Inclusion of Class Members
        Who Submitted Late Claims by April 15, 2011**

In addition to the 4,859 Authorized Claimants, 185 claims were received with a postmark after the claims filing deadline, but before April 15, 2011, and are otherwise valid. La Count Aff. ¶¶ 28-29 and Exhibit N, Part Two. Lead Plaintiffs respectfully request that these Late Claims should be deemed timely and included in the Settlement.

Until the Net Settlement Fund is actually distributed, this Court retains broad and inherent equitable powers to include claims that were submitted late. *See Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) ("[W]here, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to

participate in the fund."); *see also In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). The primary purpose of these equitable powers is to balance the goals of expedient settlement distribution and the consideration due to late-arriving Class Members. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001).

Inclusion of this relatively modest number of late claims will not materially dilute the amounts to be distributed to Authorized Claimants and will not impede the administration of the Settlement. The Recognized Loss of the 4,859 Authorized Claimants who timely submitted claims and the 185 Late Claimants totals $66,750,006.21. La Count Aff. ¶ 31. The Recognized Loss of the 185 Late Claims totals $3,855,349.89, or 5.8 percent of the combined Recognized Loss of Authorized Claimants and Late Claimants. *Id*. at ¶ 29. Thus, if the Court permits the 185 Late Claims to be included in the Settlement, the amount that every Authorized Claimant will receive will only be marginally reduced from what he or she would have received if the Late Claimants were excluded. Lead Plaintiffs submit that this result is fair and reasonable, and that exclusion of the Late Claimants is unnecessary and potentially unfair.

Accordingly, Lead Plaintiffs request that the Court should deem the 185 Late Claims that are otherwise eligible but were submitted after the September 21, 2010 postmark deadline, but received on or before April 15, 2011, to be timely and allow those claimants to participate in the Settlement.

**C.    The Court Should Authorize Payment of A.B. Data's Fees and Expenses for Claims Administration**

A.B. Data has submitted detailed invoices to Lead Counsel showing that $436,301.62 in fees and expenses for claims administration in this Action that have not been paid to date. La Count Aff. ¶ 38 and Exhibit O. Lead Plaintiffs submit that the invoiced fees and expenses are reasonable given the fact that, among other things, A.B. Data was responsible for: (i) printing

7

and mailing more than 170,822 Notice Packets; (ii) establishing a toll-free number with an IVR and live operators and receiving or responding to 1,013 telephone calls; (iii) establishing a case-specific website; (iv) processing 23,864 claims; (v) sending deficiency letters and working with claimants to cure their claims; (vi) sending rejection letters; and (vii) following-up with objectors.  *See generally* La Count Aff.  Accordingly, Lead Plaintiffs request that the Court authorize payment to A.B. Data out of the Net Settlement Fund in the amount of $436,301.62.

D.    **Payment of Balance of Attorneys' Fees Awarded by the Court**

By order, dated October 14, 2010, the Court awarded Lead Counsel attorneys' fees in the amount of 11.05% of the Settlement Fund, or $2,221,800, with interest, and reimbursement of $369,733 in expenses. (Docket No. 175.)  The Court ordered that two-thirds of this fees and expense award (together with interest) should be paid within ten business days of entry of the Final Judgment and the Fee Order and the balance (together with interest) shall be paid at the time the Net Settlement Fund is distributed to Authorized Claimants.  As explained in the La Count Aff., A.B. Data has completed the administration and is prepared to finalize the distribution of the Net Settlement Fund.  Accordingly, Lead Plaintiffs respectfully request that the balance of the attorneys' fees and expenses should be paid.

E.    **The Court Should Authorize the Reallocation of Any Residual, Unclaimed Balance of the Net Settlement Fund to Authorized Claimants if Economical and the Donation of Any Remaining Funds to an Appropriate Not-for-Profit Organization**

Following the distribution to Authorized Claimants (and Late Claimants approved by the Court), the Net Settlement Fund may contain a residual balance of unclaimed funds because of uncashed, undeliverable, or returned checks, or because of a tax refund.  "Most class actions result in some unclaimed funds." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see In re Motorsports Merch. Antitrust Litig.*, 160 F. Supp. 2d 1392,

8

1393 (N.D. Ga. 2001) ("It is not uncommon in . . . class actions to have funds remaining after payment of all identifiable claims.").

Lead Plaintiffs request that if there is any balance remaining in the Net Settlement Fund following distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), A.B. Data shall, if it determines in consultation with Lead Counsel that it is cost-effective to do so, reallocate such balance among Authorized Claimants, including Late Claimants, who cashed their checks in the first distribution, in an equitable and economic fashion.  The principal factor relevant to such a determination would be the amount of such residual balance and the cost of processing and distributing it to such Authorized Claimants.  If it is not economical to do a second distribution, or if there are still residual funds after such a second distribution and it is not economical to do a further distribution, Lead Plaintiffs seek the authority to donate such residual balance to a private, non-sectarian, not-for-profit organization.  Lead Plaintiffs will seek the Court's approval of a specific organization at future date upon the submission of a supplemental filing.

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers*, 904 F.2d at 1307 (finding that district court properly considered *cy pres* distribution for the limited purpose of distributing the unclaimed funds); *Motorsports Merchandise*, 160 F. Supp. 2d at 1393 ("Where no legal claim to settlement benefits exists, a court can exercise its equitable powers to distribute the remaining funds.").

As noted, "[w]here distribution of class funds to class members is infeasible, courts often use *cy pres* principles to determine an appropriate use for the funds." *Jones v. Nat'l Distillers*, 56 F. Supp. 2d 355, 357 (S.D.N.Y. 1999).  In the class action context, the *cy pres* approach seeks

9

to apply unclaimed class action settlement or damage monies to the next best class or the next best compensation use. *Id*. In *Jones*, the court recognized that "[a] frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members." *Jones*, 56 F. Supp. 2d at 358; *see also In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 113 (D. Mass. 2007) (noting that although First Circuit has not yet had occasion to address the "cy pres" or "fluid recovery" doctrine, "many courts have distributed excess funds not claimed by class members to a charity") (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007)).

At a future date, Lead Plaintiffs will submit a supplemental filing describing an appropriate organization for the Court to approve as a beneficiary of residual funds under the *cy pres* doctrine.

### F.   Retention of Proof of Claim Forms and Other Documents

Lead Plaintiffs also request that the Court permit A.B. Data to destroy any paper copies of the Proof of Claim forms and all related paper documentation one year after the distribution of the Net Settlement Fund is complete and any electronic copies of the same three years after distribution of the Net Settlement Fund is complete.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court issue the accompanying proposed Order granting the relief sought herein.

Dated: New York, New York
July 6, 2011

Respectfully submitted,

**LABATON SUCHAROW LLP**

By: /s/ Jonathan M. Plasse
   Jonathan M. Plasse (JP-7515)
   140 Broadway
New York, New York  10005
(212) 907-0700 (tel)
(212) 818-0477 (fax)

*Lead Counsel for Lead Plaintiffs and Attorneys for the Additional Class Representative*

**MICHAEL A. CARDOZO**
Corporation Counsel of the
City of New York
Carolyn Wolpert
Keith Snow
100 Church Street
New York, New York 10007
Tel: (212) 788-0303
Fax: (212) 788-0367

*Attorneys for Lead Plaintiffs*